[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 9, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-12029

_____

D. C. Docket No. 04-02890-CV-PT-E

LEROY NUNNALLY, JR.,
GLADYS NUNNALLY,
ARLENE M. RHODES, on behalf of themselves and a
class of similarly situated persons,
a.k.a. Arlene M. Cook,

Plaintiffs-Appellees,

versus

EQUIFAX INFORMATION SERVICES, LLC,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 9, 2006)

Before DUBINA, MARCUS and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

This interlocutory appeal presents one issue: whether the Fair Credit Reporting Act requires a consumer reporting agency to provide a consumer with his complete file following a reinvestigation of disputed items of his credit history. See 15 U.S.C. § 1681i(a)(6)(B)(ii). Leroy Nunnally, Jr., Gladys Nunnally, and Arlene M. Rhodes filed a complaint that Equifax Information Services, LLC, failed to provide them each with a "consumer report," under the Act, when Equifax sent the Nunnallys and Rhodes letters that reported the results of reinvestigations they had requested and described the changes that had been made to their consumer files. Equifax moved to dismiss the complaint on the ground that the Act does not require disclosure of the complete file following a reinvestigation. The district court denied the motion to dismiss and concluded that a "consumer report" that follows a reinvestigation refers to the consumer's "full file." Nunnally v. Equifax Info. Servs., LLC, 366 F. Supp. 2d 1119, 1133 (N.D. Ala. 2005). The district court stated that it lacked "certitude" about its ruling and certified the question for interlocutory appeal. Id. We granted permission to appeal. After oral argument and thorough review of the briefs and record, we disagree with the district court. Because the plain language of the Act does not require the disclosure of the complete file of the consumer and the letters Equifax sent to the Nunnallys and Rhodes satisfied the reporting requirements following a reinvestigation, we reverse

2

and remand with instruction to dismiss.

## I. BACKGROUND

Equifax is one of the three largest credit reporting agencies in the United States. It assembles and disperses credit reports to third parties in exchange for compensation. Equifax also is one of the largest national repositories of financial data.

In 2002, Leroy and Gladys Nunnally each requested a credit report from Equifax. The credit reports that the Nunnallys received incorrectly listed each as having a First USA Bank account and a JC Penney/Monogram account. The Nunnallys informed Equifax of these errors and requested a reinvestigation, but Equifax did not report the results of the reinvestigation to the Nunnallys.

The Nunnallys again requested credit reports in 2004, and the Nunnallys discovered that those reports contained the same errors as the 2002 reports. The Nunnallys again requested that Equifax perform a reinvestigation. Equifax sent Leroy Nunnally a one-page letter that stated that the JC Penney/Monogram account had been removed from his file and that the First USA Bank account was not currently reporting. A week later, Equifax sent Gladys Nunnally a one-page letter that stated that both the JC Penney/Monogram and the First USA Bank accounts had been removed from her file. The Nunnallys then paid for copies of their

3

complete files to ensure that the corrections had been made. Neither copy of their consumer files contained inaccurate information.

Rhodes also discovered inaccuracies in her Equifax credit report in 2004. Rhodes's report incorrectly stated that she owed balances to CBS Collection Division and Homecomings Financial Network and had accounts with Merchants & Farmers and Discover Financial Services. She reported these errors to Equifax and informed Equifax that her surname had changed from Cook to Rhodes, following her divorce.

Equifax sent Rhodes a two-page letter that stated that the CBS Collection Division account had been deleted, her name had been updated, the Home Financial Network account was reported as closed, and the Merchants & Farmers account was paid. Equifax did not provide a report about the alleged account with Discover Financial Services. Rhodes then paid for a copy of her complete file to check for inaccuracies. The file still listed the Discover Financial Services account and misspelled Rhodes's name as "Phodes."

On October 1, 2004, the Nunnallys and Rhodes filed this action and complained that Equifax had failed to comply with the Fair Credit Reporting Act when it did not send them each a "complete copy" of their consumer reports following the reinvestigations. 15 U.S.C. § 1681i(a)(6). The Nunnallys and

4

Rhodes sought certification of a plaintiff class of all those who had requested a reinvestigation but had not received a "free and complete copy" of their consumer report from Equifax following the reinvestigation. Equifax moved to dismiss the complaint for failure to state a claim upon which relief could be granted. Equifax argued that the letters it sent to the Nunnallys and Rhodes satisfied the requirements of section 1681i(a)(6)(B)(ii), which required Equifax to provide the Nunnallys and Rhodes with a "consumer report."

The district court denied the motion of Equifax. The district court determined that the letters Equifax sent to the Nunnallys and Rhodes were excluded from the definition of "consumer report" because those letters were communications relating solely to transactions between the Nunnallys and Rhodes and Equifax. Nunnally, 366 F. Supp. 2d at 1132. The district court examined the purpose and structure of section 1681i(a)(6) and concluded that, because the Act requires that a "consumer report" must be provided to the consumer "as part of" or "in addition to" the notice of the results of a reinvestigation, the "consumer report" is "something over and above the mere results" of the reinvestigation. Id. at 1333. The district court concluded that the "something over and above the mere results" is the consumer's complete file. Id. The district court also stated that it lacked "certitude" in its conclusion and certified this issue for interlocutory appeal. Id.

5

## II. STANDARD OF REVIEW

We review <u>de novo</u> the ruling of the district court on a motion to dismiss and construe the allegations in the complaint "in the light most favorable to the plaintiff." <u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). "A motion to dismiss is granted only 'when the movant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Id.</u> (quoting <u>Jackson v. Birmingham Bd. of Educ.</u>, 309 F.3d 1333, 1335 (11th Cir. 2002)).

## III. DISCUSSION

The Fair Credit Reporting Act requires a consumer reporting agency to provide a free reinvestigation of a consumer's file if "the completeness or accuracy of any item of information contained in a consumer's file . . . is disputed by the consumer." 15 U.S.C. § 1681i(a)(1)(A). After a reinvestigation, the consumer reporting agency "shall provide written notice to a consumer of the results of a reinvestigation." <u>Id.</u> § 1681i(a)(6)(A). "As part of, or in addition to, the notice . . . , a consumer reporting agency shall provide . . . a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation . . . ." <u>Id.</u> § 1681i(a)(6)(B).

We must decide whether the consumer report that a credit reporting agency

provides to a consumer following a reinvestigation is the consumer's complete file or a description of revisions to that file, and we must decide whether Equifax satisfied its obligation to the Nunnallys and Rhodes. Equifax argues that neither section 1681i nor any other section of the Act requires disclosure of the consumer's complete file. The Nunnallys and Rhodes respond that both the text and the purpose of the Act support disclosure of the consumer's complete file. Equifax argues that it satisfied its obligations to the Nunnallys and Rhodes, but they respond that Equifax was obligated to provide them more information.

We divide our discussion of this appeal into two parts. First, we address whether the Act requires disclosure of a consumer's complete file following a reinvestigation. Second, we discuss whether Equifax satisfied its obligation to the Nunnallys and Rhodes based on a correct understanding of the Act.

### A. The Act Does Not Require Disclosure of the Consumer's Complete File After Reinvestigation.

Equifax argues that the district court erred in its interpretation of the term "consumer report" on two grounds. First, Equifax argues that the language of section 1681i and the definitions in section 1681a establish that a credit reporting agency need not provide a consumer his complete file following a reinvestigation. Second, Equifax argues that other provisions of the Act require a credit reporting agency to provide a consumer his complete file in different circumstances, and the

7

contrast of those provisions supports an interpretation that section 1681i does not require disclosure of the consumer's complete file. The Nunnallys and Rhodes respond that the purpose of the Act requires that credit reporting agencies provide more information to consumers following a reinvestigation than Equifax provided to the Nunnallys and Rhodes. We address each argument in turn.

1. The Text of Section 1681i Does Not Require Disclosure of the Consumer's Complete File After Reinvestigation.

We begin our analysis of the Act with the definitions of the terms "consumer report" and "file." A "consumer report" is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living . . . ." Id. § 1681a(d)(1). The definition of "consumer report" excludes "any [] report containing information solely as to transactions or experiences between the consumer and the person making the report." Id. § 1681a(d)(2)(A)(i). The Act defines "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." Id. § 1681a(g).

Equifax argues that the text of the requirement that the "consumer report" be "based upon the consumer's file as that file is revised," id. § 1681i(a)(6)(B) (emphasis added), establishes that the consumer report following a reinvestigation

8

is different from the complete file of the consumer. We agree. The "consumer report" referenced in section 1681i(a)(6)(B)(ii) is not the "consumer's file" because that section states that the required "consumer report" is "based upon the consumer's file." We have recognized, in the context of a different statute, that the phrase "based upon" describes a relationship in which one thing "must be derivative" of another. See Fogade v. ENB Revocable Trust, 263 F.3d 1274, 1295 (11th Cir. 2001) (citing 22 U.S.C. § 2370(e)(2)). As Equifax correctly explains, "a report is not 'based upon' the consumer's file if it is the entire file." To conflate the meaning of "consumer report" with "file" would make the terms redundant. It is a cardinal principle of statutory construction that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW, Inc. v. Andrews, 534 U.S. 19, 31, 122 S. Ct. 441, 449 (2001).

Equifax persuasively argues that the phrase "as that file is revised" requires a credit reporting agency to provide a report to the consumer about the revisions to the consumer's file. The section at issue reads, "a consumer reporting agency shall provide . . . a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation." 15 U.S.C. § 1681i(a)(6)(B)(ii). The phrase "as that file is revised" modifies the consumer's complete file upon which

9

the consumer report is based, and it does nothing more than require the consumer report to be based on the revised information. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132, 120 S. Ct. 1291, 1301 (2000).

The district court relied on two sections of the Act and erroneously concluded that disclosure of the complete file is required. First, the district court concluded that the definition of "consumer report" in section 1681a(d)(2)(A)(i) excludes the type of information Equifax provided to the Nunnallys and Rhodes. Second, the district court concluded that, based on the language and structure of section 1681i, the Act requires disclosure of the complete file following reinvestigation. We disagree.

As to the first section, the definition of "consumer report" specifically excepts "any report containing information solely as to transactions or experiences between the consumer and the person making the report," 15 U.S.C. § 1681a(d)(2)(A)(i), but the district court erroneously concluded that the information Equifax sent to the Nunnallys and Rhodes fell within this exception, Nunnally, 366 F. Supp. 2d at 1132. The problem with this conclusion is that the "transactions or experiences" exception exempts any report "based solely on [the reporter's] own

10

experiences with one of its customers," Smith v. First Nat'l Bank of Atlanta, 837

F.2d 1575, 1578 (11th Cir. 1988), not reports that include "information furnished

by third parties to credit reporters," Johnson v. Fed. Express Corp., 147 F. Supp.

2d 1268, 1274 (M.D. Ala. 2001); see also Hodge v. Texaco, Inc., 975 F.2d 1093,

1095 (5th Cir. 1992) (stating that the exception applies to reports based on "first-

hand experience . . . , not on information gathered from outside sources").  The

letters from Equifax did not contain information solely about first-hand

experiences of Equifax with the Nunnallys and Rhodes.  The letters provided

information reported to Equifax by third parties, such as JC Penney/Monogram,

First USA Bank, CBS Collection Division, Homecomings Financial Network, and

others.  These letters are not excluded from the definition of a "consumer report."

As to the second section, the district court relied on the language of section

1681i(a)(6)(B) that the "consumer report" shall be "part of, or in addition to" the

written notice of the reinvestigation required by section 1681i(a)(6)(A) to conclude

"that something over and above the mere results is required," Nunnally, 366 F.

Supp. 2d at 1133, but that language does not require disclosure of the consumer's

complete file.  The phrase "part of, or in addition to" allows two methods by which

the consumer reporting agency can provide the consumer report to the consumer:

either (1) as part of the written document that is the notice of the results of the

11

reinvestigation or (2) in a separate document. The language of section 1681i(a)(6)(B) does not require that a consumer report must be the consumer's complete file.

### 2. The Use of the Terms "Consumer Report" and "File" in Other Sections of the Act Suggest That Section 1681i Does Not Require Disclosure of the Complete File After Reinvestigation.

In contrast with the sections pertaining to disclosures following reinvestigations, several sections of the Act plainly refer to disclosures of a consumer's complete file in other circumstances. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23, 104 S. Ct. 296, 300 (1983). The application of this rule of statutory construction further supports the argument of Equifax that section 1681i does not require disclosure of the consumer's complete file after reinvestigation.

The pivotal section regarding the disclosure of the consumer's complete file is section 1681g. Under subsection (a)(1), a consumer reporting agency must disclose "all information in the consumer's file" upon a consumer's request. 15 U.S.C. § 1681g(a)(1). Another subsection refers back to a "consumer report under subsection (a) of this section" to refer to the consumer's complete file. Id. §

12

1681g(c)(1)(B)(i).  That Congress did not refer to section 1681g(a) in the requirements for a report following a reinvestigation, id. § 1681i(a)(6)(B)(ii), but referred to section 1681g(a) in subsection (c)(1)(B)(i), is evidence that Congress did not intend to require disclosure of the consumer's complete file as the consumer report following reinvestigation.

Sections 1681j and 1681m, in contrast with section 1681i, also refer to the disclosure requirement of a consumer's complete file under section 1681g.  Section 1681j(a)(1)(A) requires that all consumer reporting agencies "shall make all disclosures pursuant to section 1681g once during any 12-month period," and that disclosure involves the consumer's complete file.  Section 1681m requires users of consumer reports that have taken adverse actions against a consumer based on the information in the consumer report to notify the consumer of his right to obtain "a free copy of a consumer report on the consumer."  Id. § 1681m(a)(3)(A).  Section 1681m states that the consumer's right to a free consumer report is exercised under section 1681j, which, in turn, cross-references section 1681g.  These cross-references to section 1681g are not included in section 1681i, which pertains to reinvestigations.

At oral argument, counsel for the Nunnallys and Rhodes conceded that the statutory language of the Act does not require disclosure of the consumer's

complete file, but counsel insisted that the Act requires more than the disclosure of the information provided in the letters from Equifax to her clients. When questioned, counsel for the Nunnallys and Rhodes was unable to identify any portion of the Act that establishes what is required beyond the information in the letters Equifax provided. Counsel for the Nunnallys and Rhodes referred to section 1681i(d) as instructive, but did not provide further explanation.

In their brief, the Nunnallys and Rhodes argued that section 1681i(d) suggests that, following a reinvestigation, a credit reporting agency must provide the consumer's complete file. Under 1681i(d), a consumer may request the credit reporting agency "to furnish notification . . . to any person specifically designated by the consumer who . . . received a consumer report . . . which contained the deleted or disputed information." The Nunnallys and Rhodes argued that disclosure of the consumer's complete file is required because "the consumer will be able to 'specifically designate' which persons need to receive the updated information only if he has been provided the identity of any and all persons who have reviewed the inaccurate information."

There are two problems with the argument of the Nunnallys and Rhodes. First, it is clear from other sections of the Act that ordinarily a consumer would know when a third party has reviewed the erroneous consumer report, and the lone

14

exception involves negligible harm to the consumer. A consumer annually may receive a free copy of his complete file, which discloses all inquiries about the consumer, see id. §§ 1681j, 1681g(a)(3)(A), and the majority of circumstances in which a consumer report may be furnished to a third party require either notice to or permission of the consumer or involve transactions or proceedings in which the consumer would know that his consumer report would be sought, see id. § 1681b(a)(1), (a)(2), (a)(3)(B)-(D), (a)(3)(F)(i), (a)(4). In addition, under section 1681m, a third party is required to inform the consumer of any "adverse action," as defined in section 1681a(k), that the third party has taken based in whole or in part on information contained in the consumer report, id. § 1681m(a)(1), which means that the consumer would be aware that the third party had reviewed the consumer's report. A consumer would be unaware of third parties who received the inaccurate consumer report only when those parties took no adverse action against the consumer. We cannot conclude that this trivial circumstance requires a consumer reporting agency to inform the consumer of all persons who reviewed the inaccurate file when the plain language of the Act says otherwise.

Second, the failure of the credit reporting agency to provide the identities of third parties who requested an erroneous consumer report does not necessarily prevent the consumer from taking advantage of the notification right in section

15

1681i(d). Following receipt of the consumer report, the consumer could request that the credit reporting agency notify every person who, according to the files of the agency, had received an erroneous report, of the corrections to the consumer's file. That request by the consumer would appear to satisfy the consumer's burden of specific designation under section 1681i(d).

### 3. The Purpose of the Act Does Not Require Disclosure of the Consumer's Complete File After Reinvestigation.

The Nunnallys and Rhodes argue that the purpose of the Act will be undermined by permitting credit reporting agencies to give a summary of the changes made as a result of the reinvestigation. The Act is intended to prevent inaccurate reporting of consumer credit ratings, see id. § 1681(b), and the Nunnallys and Rhodes argue that consumers need more information than Equifax provided "to make sure the inaccurate information is completely removed" from the consumer's complete file. This argument is based on a faulty premise.

The Nunnallys and Rhodes erroneously assume that more information is always better and disclosure of the consumer's complete file will better enable consumers to detect inaccuracies. This assumption is not necessarily correct, because the revisions may not be apparent to a consumer in his review of the complete file. In contrast, the summary letters Equifax sent to the Nunnallys and Rhodes highlighted the changes made to their files and provided a simple method

16

for the Nunnallys and Rhodes to determine whether each of their contested items had been addressed by Equifax.

The more fundamental problem with the argument of the Nunnallys and Rhodes regarding the purpose of the Act is that their argument is contrary to the text of the Act.  Congress has stated in the Act what information it considers necessary for consumers to verify the accuracy of their complete files.  Congress has determined that a "consumer report based on the file as that file is revised," id. § 1681i(a)(6)(B), satisfies the purposes of the Act.  "[W]e should . . . seek guidance from the text of the statute and settled legal principles rather than from our views about sound policy."  Shotz v. City of Plantation, 344 F.3d 1161, 1166 n.6 (11th Cir. 2003) (quoting Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 296, 118 S. Ct. 1989, 2002 (1998) (Stevens, J., dissenting)).  We will not second-guess Congress.

### B. Equifax Satisfied the "Consumer Report" Requirement of Section 1681i(a)(6)(B)(ii).

Because we conclude that the Act does not require disclosure of the complete consumer file following a reinvestigation, we turn to whether Equifax satisfied its obligation to send the Nunnallys and Rhodes a "consumer report."  Section 1681i(a)(6)(A) requires the consumer reporting agency to provide written notice of the results of the reinvestigation, and subsection (a)(6)(B) requires that,

17

"as part of, or in addition to," that notice, the credit reporting agency must provide, among other things, a consumer report based on the revised file. That consumer report must be something more than the notice of the results of the investigation, otherwise subparagraph (B) would be redundant. See TRW, Inc., 534 U.S. at 31, 122 S. Ct. at 449. The question before us is whether, based on the facts alleged in the complaint of the Nunnallys and Rhodes, Equifax satisfied its obligation to provide the report described in subparagraph (B).

Equifax satisfied its obligation. The term "consumer report" has the same meaning in section 1681i(a)(6)(B)(ii) that it has in section 1681a(d), which is, "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living . . . ." See 15 U.S.C. § 1681a(d)(1) (emphasis added). Equifax satisfied the notice requirement when it informed the Nunnallys and Rhodes that it had reinvestigated their complaints and determined that their complaints were valid, and Equifax satisfied the "consumer report" requirement when it informed the Nunnallys and Rhodes of the changes it had made to their respective files as a result of the reinvestigation. Equifax did not violate the Act.

## IV. CONCLUSION

18

We reverse the decision of the district court and remand with instruction to grant the motion of Equifax to dismiss.

**REVERSED and REMANDED with instructions.**